726 So.2d 783 (1998)
Tessann SWARTZ, Appellant,
v.
McDONALD'S CORPORATION and Corporate Systems, Appellees.
No. 97-3023
District Court of Appeal of Florida, First District.
November 12, 1998.
*784 Alfred J. Hilado, Orlando; Bill McCabe, Longwood, for Appellant.
Scott B. Miller and Jason D. Lazarus of Hurley, Rogner, Miller, Cox & Waranch, P.A., Orlando, for Appellees.
VAN NORTWICK, J.
In this worker's compensation appeal, Tessann Swartz, the claimant below and a former human resources trainee for appellee, McDonald's Corporation (the employer), appeals an order of the Judge of Compensation Claims (JCC) denying compensability of her petition for benefits on the ground that her claim was barred by the operation of the going and coming rule, section 440.092(2), Florida Statutes (1995). We affirm on all issues, although we write to address only one: Whether claimant's carrying in her car the employer's display booth for use in her employment at a job fair turned otherwise noncompensable travel from work to home into compensable employment travel? Our review of the record leads us to the conclusion *785 that claimant established nothing more than she was carrying the paraphernalia or tools useful in her employment when she was injured in an automobile accident on her way home from work. Competent, substantial evidence supports the JCC's finding that claimant was not involved in employment related travel.

Factual and Procedural Background
Claimant, who lives in Orlando, commuted to Tampa where her human resources training primarily occurred. Much of claimant's training was on-the-job and her duties included the recruitment of new store managers, requiring her attendance representing McDonald's at various job fairs. On Friday, March 1, 1996, claimant attended a regional McDonald's meeting in Tampa. Barbara Lenco, another McDonald's human resources employee, and claimant were required to attend a job fair starting in Orlando on Monday, March 4 at 1:30 p.m. After the Friday meeting ended at 3:50 p.m., Lenco and claimant placed in claimant's car a part of a booth used to advertise McDonald's at job fairs. The remaining part of the booth was put in Lenco's car. Claimant testified that she planned to store the part of the booth for which she was responsible at home over the weekend and on Monday travel to the job fair site with the booth. The job fair booth is normally stored in McDonald's Tampa offices when not in use.
After leaving her office on March 1, claimant began the drive to her home in Orlando. En route home, she was involved in an automobile accident on Interstate Highway 4 at approximately 5:30 p.m. the same day.
Claimant filed a petition seeking temporary disability benefits. The employer/carrier defended on the grounds that claimant's injuries did not arise out of and in the course and scope of her employment.
At the hearing, claimant testified that, when the promoters of a job fair give prospective employers enough space, McDonald's would set up a display booth advertising its name and services. At this particular Orlando job fair, McDonald's was allowed to have a booth. Both claimant and her supervisor testified that it was the responsibility of the human resources staff to take the booth to the job fair. Lenco and claimant planned to set the booth up at the job fair location on Monday. In fact, despite the accident, claimant did attend the job fair on Monday, March 4, 1996, bringing her part of the job fair booth with her.
The JCC ruled in pertinent part:
The fact that the claimant had a booth in the back of her car on the date of accident which she intended to use the following Monday in Orlando does not turn this otherwise non-compensable going and coming case [into] a compensable event. The claimant made no special trip to Tampa to secure this "tool." At the time of the claimant's accident she was on a journey which was regular and frequent and was not prompted by any sudden call by her employer. The burden of placing a tool in her car to transport with her for use in her job the following Monday was minor when viewed in context of the claimant's usual duties and route home. The fact is abundantly clear that at the time of the accident the claimant was off work and not engaged in any employment related duty nor was she on any employer requested errand. The accident and injuries sustained therein were personal to the claimant and occurred at [a] time when claimant was returning home from work at her usual, normal, and customary place of employment.

Going and Coming Rule
Under the going and coming rule, "injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment." Sweat v. Allen, 145 Fla. 733, 200 So. 348, 350 (1941). The going and coming rule has been codified in section 440.092(2), Florida Statutes (1995), as follows:
Going or ComingAn injury suffered while going to or coming from work is not an injury arising out of and in the course of employment whether or not the employer provided transportation if such means of transportation was available for the exclusive personal use by the employee, unless *786 the employee was engaged in a special errand or mission for the employer.
"In the course of employment" refers "to the time, place and circumstances under which the accident occurs," Spivey v. Battaglia Fruit Co., 138 So.2d 308, 311 (Fla.1962), and "arising out of" refers to "origin or cause." Id.
Since industry must carry the burden [of the expenses incident to the hazards of employment], there must then be some causal connection between the employment and the injury, or it must have had its origin in some risk incident to or connected with the employment, or have followed from it as a natural consequence.
Glasser v. Youth Shop, 54 So.2d 686, 687 (Fla.1951).
The going and coming rule does not apply to employee travel which is undertaken to perform a special errand or mission for the employer. D.C. Moore & Sons v. Wadkins, 568 So.2d 998, 999 (Fla. 1st DCA 1990). A special errand may exist "if the journey was a substantial part of the service performed for the employer [or] ... where the employee is instructed to perform a special errand which grows out of and is incidental to his employment." Id. (citations omitted).
We find unavailing claimant's contention that the record evidence below compels a finding that she was on a special errand or mission for her employer at the time of her injury. To the contrary, although carrying a booth to job fair sites was an employment duty of claimant, below even claimant's own attorney characterized the transportation of the booth as a "minimal job duty." Further, the particular journey to Orlando on March 1 was not undertaken as a service for the employer. We find competent, substantial evidence to support the JCC's finding that claimant's travel to Orlando did not arise out of her employment or involve the performance of a special errand or mission or task outside regular hours at the request of the employer and for the employer's benefit. See Eady v. Medical Personnel Pool, 377 So.2d 693, 695 (Fla.1979); D.C. Moore & Sons v. Wadkins, 568 So.2d 998, 998-99 (Fla. 1st DCA 1990); Bruck v. Glen Johnson, Inc., 418 So.2d 1209, 1211 (Fla. 1st DCA 1982). As stated in Eady, 377 So.2d at 696, compensation will be denied under the going and coming rule where the journey is essentially for personal reasons, as the JCC found in the instant case.
Claimant also argues that under Schoenfelder v. Winn & Jorgensen, P.A., 704 So.2d 136 (Fla. 1st DCA 1997), her travel to Orlando was excepted from the going and coming rule and, therefore, was within the course of her employment. We cannot agree. In Schoenfelder, the claimant, an attorney, began preparing for a deposition at home in the morning, and was struck by a vehicle while walking to his car to drive to the scheduled deposition of the physician at the physician's office. The claimant established that travel to various locations was a necessary part of his job. Thus, the record evidence supported that he was not simply commuting between his house and his regular office, but was within the "time and place" of his employment at the time of his injury.

Dual Purpose Doctrine
Finally, we disagree with claimant that her drive the evening of March 1 was compensable because it had dual purposes, a business one as well as the personal one of commuting home from work. The so-called "dual purpose doctrine" provides that an injury which occurs during travel serving both business and personal purposes is considered within the course of employment if the travel involves the performance of a service essential to the business of the employer such that the travel would be required to be undertaken by someone on the employer's behalf if it had not coincided with the claimant's personal journey. D.C. Moore & Sons, 568 So.2d at 999. The parameters of the dual purpose doctrine are demonstrated by Gulliford v. Nikko Gold Coast Cruises, 423 So.2d 588, 589 (Fla. 1st DCA 1982), approved sub nom., Nikko Gold Coast Cruises v. Gulliford, 448 So.2d 1002 (Fla.1984). In Gulliford, the claimant's duties included emptying the cash drawers used by the employer's ticket sellers, locking the money in his car, safekeeping the cash at home at night, and returning it to work in the morning. The ticket sellers were unable to open for business until the operating cash was returned. Id., 448 So.2d *787 at 1003. Claimant was involved in an automobile accident while he was on his way to work with the money in his possession. This court, in ruling the accident compensable, focused on the fact that taking the employer's operating funds home was an employment duty which was part of the claimant's contract of employment. Id., 423 So.2d at 590.
On review in the Florida Supreme Court, however, the Court explained that, in Florida, the focus should not simply be on whether the travel might have included an incidental employment responsibility, but rather whether the concurrently undertaken task is so important to the business of the employer that the trip would have been required in any event. Nikko Gold Coast Cruises v. Gulliford, 448 So.2d at 1004 (Fla.1984). The Court found that the concurrent task in Gulliford was essential to the employer's operations. "Even if Gulliford had not intended to come to work for the day, he would have still had to make the same trip in order to return the operational cash to the business or, make arrangements for someone else to do so." Id. The Supreme Court adopted the rationale of then Judge Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (N.Y. 1929), where he explained an analytical approach to the dual purpose doctrine, as follows:
To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled.... The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.
167 N.E. at 183 (citation omitted).
In the instant case, the claimant failed to establish that she was performing a necessary or essential part of her service to her employer by carrying the job fair booth home with her the evening of March 1. For example, there is no evidence in the record that McDonald's participation in the job fair could not have occurred without the booth or that, if claimant had failed to transport the booth on her commute home, a special trip for the booth would have been required. To the contrary, the evidence shows that McDonald's routinely participated in job fairs without using a display booth. It certainly was not established that the claimant's trip from Tampa to Orlando on March 1 would have been required even if the claimant's personal motive of going home had been removed. Merely carrying paraphernalia or tools of her employment does not convert the claimant's trip from personal to employment travel. See United States Fidelity & Guar. Co. v. Rowe, 126 So.2d 737 (Fla.1961).
AFFIRMED.
PADOVANO, J., concurs.
BENTON, J., dissents with written opinion.
BENTON, J., dissenting.
I cannot subscribe to the majority opinion's thesis that the trip on which Ms. Swartz had an automobile accident on March 1, 1996, did not serve a business purpose of her employer. That it also served a personal purpose I quite agree. But the rule is that an injury is compensable if the injury "occurred as the result of a trip, a concurrent cause of which was a business purpose." Nikko Gold Coast Cruises v. Gulliford, 448 So.2d 1002, 1005 (Fla.1984).
In training for work as a "human resources consultant" for McDonald's, Ms. Swartz attended a meeting in Tampa on Friday, March 1, 1996. After the meeting, she and Barbara Lenco, a McDonald's employee helping with the training, loaded half of a portable recruiting booth into the company car assigned to Ms. Swartz. The booth was to be used at an Orlando job fair the following Monday. Ms. Lenco testified:
Q.... Ms. Jones has indicated in her testimony that she thought transporting the booths w[as] part of your job responsibility *788 as an [human resources] consultant. Would you agree or disagree?
A. I would agree that it is part of our job responsibility to make sure the materials that we need for the job fair ... [are] there with us.
Q. Was Ms. Swartz transporting [part of] a booth on March 1, 1996 to Orlando?
A. Yes, she was.
Q. And it was necessary in order to have it ready for the job fair; is that right?
A. Yes, that started on Monday.
Ms. Lenco indicated that two vehicles were needed to transport the recruiting booth to Orlando so that she needed Ms. Swartz's help to accomplish the task. McDonald's counsel stipulated that "we told her to bring the booth and ... that was the arrangement." Carolyn Jones, Ms. Swartz's supervisor, counted on the employees she supervised to take recruiting booths to job fairs. She testified:
Q.... Now how would [the] booths ordinarily make it to the location of the job fair?
A. Whoever doing the job fair would carry them.
Q. Would the job fairs typically require a setup of a booth?
A. Typically, yes.
. . . .
Q. Did you have any role of scheduling th[e] job fair [on March 4, 1996], meaning putting it down on either Barbara Lenco's and/or Tessann Swartz's calendar?
A. Yes
Q. Okay. How did you expect th[e] booth to arrive at the job fair?
A. I expected the employees to carry it.
Q. Was that part of [Ms. Swartz's], although minimal job duty, is that still something you would expect an [human resources] consultant to transport with them if they are going to a job fair?
A. Yes.
Plainly one of Ms. Swartz's job duties was to bring her portion of the booth to the job fair. That is what she was doing when the accident occurred on I-4 at the I-75 interchange, well before she reached Orlando and the point at which she would have left the highway to go home. See generally Standard Distrib. Co. v. Johnson, 445 So.2d 663, 664 (Fla 1st DCA 1984) (holding that, where an employee intends to deviate from his route, he remains within the course and scope of employment until a deviation actually occurs); El Viejo Arco Iris, Inc. v. Luaces, 395 So.2d 225, 226 (Fla. 1st DCA 1981) (stating that an employee traveling his regular route home remained within the course and scope of his employment until he had completed an errand assigned by his employer).
The Workers' Compensation Law now treats even traveling employees as outside the scope of their employment, while they are going to and coming from work, Ch. 93-415, Laws of Fla., § 6, at 78 (amending section 440.092(4), Florida Statutes (1995)), but only if an exception to the going and coming rule does not apply. Although section 440.092(2), Florida Statutes (1995), states broadly that an "injury suffered while going to or coming from work is not an injury arising out of and in the course of employment," the cases are clear that the statutory codification of the going and coming rule, chapter 90-201, Laws of Florida, section 14, at 920 (reenacted in chapter 91-1, Laws of Florida, section 10, at 35), does not abrogate the exception for trips that serve a dual purpose. See Hages v. Hughes Elec. Serv., 654 So.2d 1280 (Fla. 1st DCA 1995). See also Securex, Inc. v. Couto, 627 So.2d 595 (Fla. 1st DCA 1993).
The trip Ms. Swartz was making at the time of the accident had two purposes. She was going home (although she had not yet deviated from the route that led to the job fair) at the same time that she was performing her job by transporting part of the booth. As one commentator has explained,
it is not necessary, under [the dual purpose doctrine], that, on failure of the personal motive, the business trip would have been taken by this particular employee at this particular time. It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have *789 been chosen; but if a special trip would have had to be made for this purpose, and if the employer got the necessary item of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip, rather than an incidental appendage or afterthought.
1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 18.13, at 4-368 to 69 (1997) (footnotes omitted). Ms. Swartz might have stayed the weekend in Tampa and driven directly to the job fair on Monday. But she or someone else "sometime would have had to take the trip" to transport her half of the booth to the job fair. McDonald's policies dictated that the booth be at that job fair and created the need for the trip. See Marks' Dependents v. Gray, 251 N.Y. 90, 93-94, 167 N.E. 181 (N.Y.1929).
The judge of compensation claims found "that the booth was a tool which they used to give brand identity to their display at these job fairs." It was adorned with the corporate logo. Whatever the benefit to recruiting may have been, transporting the booth was not "minimal" in the sense of being perfunctory or optional for an employee like Ms. Swartz. The booth was too big for one car. It appears two people loaded one half into Ms. Swartz's car. The booth differs, moreover, from a plumber's wrenches or a salesman's sample case which is unlikely to be put to use apart from its bearer. See generally 1 Larson's, supra, § 18.24, at 4-387 to 406. Even in Ms. Swartz's absence, her employer's interests would be advancedor so its officers and managers evidently thoughtby the presence of the booth at the job fair, at least if Ms. Lenco or another was on hand to (wo)man it.
Our supreme court has said that "it is not necessary that the dominant purpose of a trip be business. All that need be determined is that an injury occurred as the result of a trip, a concurrent cause of which was a business purpose." Nikko Gold Coast Cruises, 448 So.2d at 1005. See Cook v. Highway Casualty Co., 82 So.2d 679, 682 (Fla.1955). Because today's decision conflicts with these controlling precedents, I respectfully dissent.