788 So.2d 937 (2001)
Tessan SWARTZ, Petitioner,
v.
McDONALD'S CORPORATION, Respondents.
No. SC94489.
Supreme Court of Florida.
May 24, 2001.
*939 Alfred J. Hilado, Orlando, FL; and Bill McCabe, Longwood, FL, for Petitioner.
Scott B. Miller of Hurley, Rogner, Miller, Cox & Waranch, P.A., Orlando, FL, for Respondents.
QUINCE, J.
We have for review Swartz v. McDonald's Corp., 726 So.2d 783 (Fla. 1st DCA 1998), which expressly and directly conflicts with our opinions in Nikko Gold Coast Cruises v. Gulliford, 448 So.2d 1002 (Fla.1984), and Cook v. Highway Casualty Co., 82 So.2d 679 (Fla.1955). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we hold workers' compensation benefits are payable under the dual purpose exception to the "going and coming" rule and quash the decision below.

FACTUAL BACKGROUND
Tessan Swartz (Swartz) seeks review of the denial of her workers' compensation claim. At the time of her injury, Swartz was an employee of McDonald's Corporation (McDonald's). Although Swartz lived in Orlando, she commuted to Tampa for training as a human resources consultant, a position she assumed in December 1995. Swartz filed an initial worker's compensation claim on September 23, 1996, which, in combination with petitions filed February 14, 1997, and February 17, 1997, was heard on April 23, 1997. At the workers' compensation hearing, Barbara Lenco, a human resource consultant in the Tampa office, testified concerning her employment duties. Those duties included interviewing, hiring, and recruiting management personnel for McDonald's. Carolyn Jones, the human resource manager, corroborated Lenco's testimony.
The job requires consultants to travel to various events, including job fairs. As part of her training, Swartz accompanied Lenco to various functions. When traveling, consultants utilize a company car, and McDonald's subsidizes the gas payments. According to Jones, 70 to 75% of Swartz's time was spent in the Tampa office, and 25% was outside of the office. When a trainee becomes a full-fledged human resource consultant, such as Lenco, that percentage would change to 75% of the time in the field and 25% of the time in the *940 office. If nothing was planned outside the Tampa office, the consultant would report to the Tampa office. If, however, an event was scheduled, the consultant could commute directly to the site. Although the standard business hours for the Tampa office were from 8:30 a.m. to 5 p.m., Swartz had no fixed hours of employment.
At job fairs, consultants set up booths that indicate McDonald's presence at the event. As Swartz testified, the booth is an integral part of attending job fairs because it easily identifies well-known employers. Once the consultants open up the booth, they attach a back-drop which displays the name of the company and pictures of McDonald's employees who have been recruited. The booth is stored in the stockroom in the Tampa office. It is unrefuted that the consultant is responsible for transporting the booth from Tampa to the site of the job fair.
On Friday, March 1, 1996, Swartz and Lenco attended a regional meeting in Tampa, which was scheduled by the regional vice president. On March 4, 1996, Swartz and Lenco were scheduled to attend a job fair in Orlando. After the Tampa meeting and before leaving for Orlando, Swartz checked her voice mail, picked up short term disability paperwork that she was going to deliver to someone in Orlando, and spoke with Lenco concerning the job fair in Orlando that following Monday. Swartz and Lenco loaded part of the booth into Lenco's vehicle, along with some recruitment information for the job fair. Swartz placed part of the booth in her back seat because it did not fit in Lenco's car.
Swartz testified that in order for her to bring the booth to any job fair, she would have to go to Tampa to pick up the booth, unless she was picking it up from another consultant. Swartz also testified that she was expected to bring the booth, and there were no other alternative arrangements. Jones, Lenco, and Jill Wolf, a human resource coordinator, all confirmed that the transport of the booth was one of Swartz's employment duties. Jones further testified that job fairs typically require set-up of the booth.
After Swartz loaded the recruitment booth in her car, she left the Tampa office and started driving to Orlando, but was rear-ended on the highway around 5:30 p.m. After contacting other supervising employees, Swartz went to the hospital where she received treatment and returned home. Swartz returned to work that Monday and attended the scheduled job fair. Swartz and Lenco brought and assembled the booth, placed the printed materials on the background, and set up the table with the literature they needed to distribute.
As of May 20, 1996, Swartz's doctor advised her that she could not continue to drive, due to injuries sustained in the accident, and that she could not undertake any prolonged sitting. Swartz continued to work for McDonald's until June 7, 1996, at which time she resigned. According to Swartz, she resigned because her physical condition no longer permitted her to continue working. She experienced spasms, fainting, and headaches, and could no longer tolerate the travel necessary for her job.

PROCEDURAL HISTORY
After Swartz filed a petition for workers' compensation benefits, McDonald's denied the claim, contending that the accident did not arise out of and in the course and scope of her employment. After a hearing, the Judge of Compensation Claims (JCC) made several findings in a June 30, 1997 order. As a threshold matter, the JCC found that attending the regional meeting in Tampa did not expose Swartz *941 to additional travel risks, and there was no special trip involved in attending the meeting. Rather, Swartz had received prior notice of the meeting for scheduling purposes to ensure that she could attend. In addition, the JCC rejected Swartz's contention that her delivery of disability forms to another hospitalized employee constituted an employment duty. Instead, the JCC concluded that Swartz was merely doing a personal favor for a friend, in light of Swartz's delivery of the forms several days after the accident and the employee's departure from McDonald's normal procedure for requesting human resource forms. The JCC further concluded that the accident was not compensable because Swartz was merely returning home, not performing an employment duty. As such, Swartz's claim was barred by the "going and coming" rule. The JCC further opined that Swartz's transport of the booth did not transform her trip into a compensable event. On the contrary, Swartz made no special trip to Tampa to secure the booth, her journey was regular and frequent, not prompted by a sudden request from her employer, and her transport of the booth was minor when viewed in light of her other employment responsibilities and route home.
Swartz appealed the JCC's decision to the First District Court of Appeal. The First District affirmed on all issues, but addressed only one in its written opinion: whether Swartz's transport of the recruitment booth transformed her trip home into a compensable event. See Swartz, 726 So.2d at 784. The court held that Swartz's accident did not fall within the ambit of the special errand or mission exception to the "going and coming" rule. See id. at 786. The court noted that Swartz was merely performing a "minimal job duty," and that her trip on the day of the accident was not made pursuant to a request by her employer. Id. In so doing, the court distinguished Schoenfelder v. Winn & Jorgensen, P.A., 704 So.2d 136 (Fla. 1st DCA 1997), in which the court held that the attorney/claimant's accident was a compensable event where he was struck by a vehicle before getting in his car to drive to a deposition. In contrasting the two cases, the court noted the claimant in Schoenfelder established that travel to various locations was a necessary part of his job, and that he was not simply commuting, but was within the "time and place" of his employment at the time of his injury. Id.
The First District also held that Swartz's accident did not fall within the parameters of the dual purpose doctrine. See Swartz, 726 So.2d at 786. In articulating the scope of the doctrine, the court stated that the business purpose must involve "the performance of a service essential to the business of the employer such that the travel would be required to be undertaken by someone on the employer's behalf if it had not coincided with the claimant's personal journey." Id. In interpreting Nikko Gold Coast Cruises v. Gulliford, 448 So.2d 1002 (Fla.1984), the First District concluded that "the focus should not simply be on whether the travel might have included an incidental employment responsibility, but rather whether the concurrently undertaken task is so important to the business of the employer that the trip would have been required in any event." Id. at 787. The First District also interpreted this Court's precedent as adopting Judge Cardozo's rationale in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (1929), which reiterated that "[t]o establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled." Swartz, 726 So.2d at 787 (quoting Marks' Dependents, 167 N.E. at 183). The court concluded that Swartz was not performing a necessary or essential *942 part of her employment duties. See id. In so doing, it recognized that McDonald's could have participated in the job fair without the booth, and that a special trip to procure the booth would not have been required if Swartz failed to bring it. See id. The court further stated, "Merely carrying paraphernalia or tools of her employment does not convert the claimant's trip from personal to employment travel." Id.
The dissent stated, however, that the record clearly established that transporting the booth was a business purpose. See id. (Benton, J., dissenting). As such, Swartz had both a business and personal purpose when driving home on the day of the accident, thereby satisfying the requirements of the dual purpose doctrine. See id. at 788. The dissent further stated that someone would have been required to transport the booth to the job fair, and that transporting the booth was not merely a minimal job duty. See id. at 789. Judge Benton also opined that the statutory codification of the "going and coming" rule did not abrogate the dual purpose exception. See id. at 788. The dissent further recognized that the majority's decision conflicted with both Nikko and Cook, in which the court held that the business purpose need only be a concurrent, not dominant, purpose. See id. at 789. Thereafter, Swartz sought review of the First District's decision, and this Court accepted jurisdiction based on express and direct conflict with Nikko and Cook.

ANALYSIS
Generally, claimants' injuries must arise out of and in the course of their employment to be compensable. The "going and coming" rule provides that injuries sustained while traveling to or from work do not arise out of and in the course of employment and, therefore, are not compensable. See Bechtel Constr. Co. v. Lehning, 684 So.2d 334 (Fla. 4th DCA 1996); George v. Woodville Lumber Co., 382 So.2d 802, 803 (Fla. 1st DCA 1980); § 440.092(2), Fla. Stat. (1995). This rule governing compensability of workers' compensation claims is codified in section 440.092(2), Florida Statutes (1995). Section 440.092(2) provides:
An injury suffered while going to or coming from work is not an injury arising out of and in the course of employment whether or not the employer provided transportation if such means of transportation was available for the exclusive personal use by the employee, unless the employee was engaged in a special errand or mission for the employer.
§ 440.092(2), Fla. Stat. (1995). The applicability of the "going and coming" rule, along with its exceptions, depends upon the nature and circumstances of the particular employment, and no exact formula can be laid down which will automatically solve every case. See Sweat v. Allen, 145 Fla. 733, 200 So. 348 (1941), superseded on other grounds by, Ch. 82-146, Laws of Fla.
Despite the broad application of the "going and coming" rule, section 440.092 delineates several exceptions.[1] *943 Because the term "dual purpose doctrine" does not appear in section 440.092, the respondents question whether the statutory phrase "special errand or mission" incorporates both the special errand exception and the dual purpose doctrine. The special errand exception includes employees who, at the time of injury, were on a special errand in response to a call from their employers, and is usually characterized by irregularity and suddenness. See Eady v. Medical Personnel Pool, 377 So.2d 693 (Fla.1979). The dual purpose doctrine provides that an injury which occurs as the result of a trip, a concurrent cause of which was a business purpose, is within the course and scope of employment, even if the trip also served a personal purpose, such as going to and coming from work. See Nikko, 448 So.2d at 1005.
Swartz contends that the language "special errand or mission" retains the dual purpose doctrine because the only way to reconcile the special errand and dual purpose lines of cases is to conclude that there is a distinct difference between "special errand" and "mission." To buttress this argument, Swartz emphasizes that the statutory language uses "or," instead of "and," thereby recognizing a distinction between the two words.
McDonald's, by contrast, asserts that the statute's reference to "special errand or mission" does not incorporate the dual purpose doctrine. McDonald's further contends that the maxim expressio unius est exclusio alteriusexpress mention of one thing is the exclusion of another demonstrates that since the dual purpose doctrine does not appear within one of the exceptions specified in the statute, the Court cannot infer that the Legislature intended that exception to remain operative.
We conclude, based on the prior usage of the terms, that the special errand or mission language contained in the statute encompasses both the special errand and the dual purpose exceptions to the going and coming rule. Although the special errand exception and the dual purpose doctrine can be applied independent of each other, they have also become interconnected in caselaw. In determining whether to apply the special errand exception, courts consider various factors, including the relative burden of the journey on the employee in light of his or her employment duties, the irregularity of the timing and nature of the journey, the suddenness of the employer's request, the time and length of the journey, and any other special circumstances. See Eady, 377 So.2d at 696. Applying these factors, the court in El Viejo Arco Iris, Inc. v. Luaces, 395 So.2d 225 (Fla. 1st DCA 1981), held that an employee's trip home, after picking up plumbing supplies at the request of his employer, did not fall within the special errand exception because his journey was regular and frequent, the employer's request was not sudden, the burden of the request was minor in light of his route home, and he had already completed the employer's request at the time of the accident. In New Dade Apparel, Inc. v. De Lorenzo, 512 So.2d 1016, 1018 (Fla. 1st DCA 1987), the court held that an injured employee who returned early from vacation to work at the special request of his employer fell within the special errand exception. In determining compensability, the court recognized that irregularity and suddenness were essential elements of the special errand exception. See also Eady, *944 377 So.2d at 695 ("As a practical matter, the irregularity and suddenness of a call from the employer will almost always qualify it as a special errand exempt from the going and coming rule."); Susan Loverings Figure Salon v. McRorie, 498 So.2d 1033 (Fla. 1st DCA 1986).
Despite the fact that the special errand exception can be an independent basis for finding an injury compensable under the workers' compensation laws, several cases applying this exception have also used this exception when referring to the dual purpose doctrine. For example, in Spartan Food Systems v. Hopkins, 525 So.2d 987 (Fla. 1st DCA 1988), the court concluded that the special errand exception applied to an employee who received a sudden call requiring her to pick up supplies and was injured after she resumed her normal route to work. In determining whether to apply the special errand exception, the court concluded that the concurrent business and personal purposes rendered the employee's trip compensable. See id. at 989. In so doing, it applied the dual purpose doctrine to buttress its conclusion that the employee fell within the special errand exception. Similarly, in D.C. Moore & Sons v. Wadkins, 568 So.2d 998, 999 (Fla. 1st DCA 1990), the court explained the special errand exception by noting that concurrent personal and business purposes may establish liability. In so doing, the court did not distinguish between the special errand and dual purpose exceptions. Likewise, in Tampa Airport Hilton Hotel v. Hawkins, 557 So.2d 953 (Fla. 1st DCA 1990), the court simultaneously applied special errand and dual purpose principles, noting that because the employee was responding to a request by her employer, and she had both business and personal purposes, she fell within an exception to the "going and coming" rule.
Nevertheless, other cases apply the dual purpose doctrine without regard to the special errand exception.[2] In Nikko, the employee had been taking cash home and returning it to the store for several years. There was no finding of suddenness and irregularity, as is required to trigger the special errand exception. Nonetheless, we applied the dual purpose doctrine to determine compensability. Similarly, in Cook, the employees were performing business duties, but not in response to a sudden or irregular request. In determining whether the employees' injuries were compensable, we merely discussed the existence of both business and personal purposes, and did not discuss factors typifying special *945 errand cases. Thus, Cook, like Nikko, involved a straightforward application of the dual purpose doctrine. In Krause v. West Lumber Co., 227 So.2d 486, 488 (Fla.1969), we applied the dual purpose doctrine to provide compensation without discussing the special errand exception. See also Hages v. Hughes Elec. Serv., Inc., 654 So.2d 1280 (Fla. 1st DCA 1995) (applying dual purpose rationale to facts not involving suddenness or irregularity).
In short, the foregoing cases indicate that the special errand exception and dual purpose doctrine can operate either in tandem or independently. As McDonald's correctly points out, in some cases courts have used the phrases "special errand" and "special errand or mission" interchangeably in cases that were exclusively applying the special errand exception. See Eady, 377 So.2d at 695; New Dade Apparel, 512 So.2d at 1017; Susan Loverings, 498 So.2d at 1034; Gray v. Dade County School Bd., 433 So.2d 1009 (Fla. 1st DCA 1983). Nevertheless, other courts have used that term when concomitantly applying both the special errand exception and the dual purpose doctrine. See Spartan, 525 So.2d at 989; D.C. Moore, 568 So.2d at 999; Tampa Airport Hilton, 557 So.2d at 954. Indeed, the application of these exceptions is often dependent upon similar principles. Consequently, the varied use of the phrase "special errand or mission" clearly indicates that the statute incorporates both the special errand exception and the dual purpose doctrine. Our conclusion renders resort to other interpretive aids suggested by the parties unnecessary.
In light of our conclusion that the dual purpose doctrine still exists, we must determine whether it is applicable in the present case. This Court first addressed whether dual purpose trips were compensable in Cook, noting that the rule in Marks' Dependents was the prevailing authority on this issue. See Cook, 82 So.2d at 680. The Marks' Dependents rule provided, in part, that "[t]o establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled." Id. (quoting Marks' Dependents, 167 N.E. at 183). We further recognized that in applying this rule, some courts required that the business purpose be the dominant purpose, but other courts merely required that the business motive be a concurrent cause of the trip. See id. at 682. We ultimately concluded the latter formulation was a better-reasoned approach and more in keeping with the remedial purpose of the workmen's compensation statute. Accordingly, we rejected the more stringent rule articulated in Marks' Dependents. See id. As a result, we agreed with the Mississippi court in Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 55 So.2d 381, 389, rev'd on other grounds, 214 Miss. 569, 59 So.2d 294 (1952),[3] when we said "`no nice inquiry will be made to determine the relative importance' of a concurrent business and personal motive. So long as the business purpose is `at least a concurrent cause of the trip,' the employer may be held liable for workmen's compensation." Cook, 82 So.2d at 682.
After Cook, we reiterated its basic principle, i.e., that a court need only find a current business and personal purpose for the journey, in Krause and Levine v. Builders Alum. Stone Co., 186 So.2d 26 (Fla.1966). Thereafter, in Nikko we outlined the parameters of a sufficient concurrent cause for dual purpose trips and distinguished United States Fidelity & *946 Guaranty Co. v. Rowe, 126 So.2d 737 (Fla. 1961), which involved an employee who was injured in an accident while carrying money belonging to her employer. In so doing, we noted that the employee in Rowe did not have an understanding with her employer regarding a storage place for the money, was not required to return the money the next day, was not performing a duty that was necessary, or even helpful, to the operation of the employer's business, and was not paid overtime or reimbursed for the cost of transporting the money. See Nikko, 448 So.2d at 1004. In contrast, the employee in Nikko had a clear understanding with his employer regarding the arrangements for safeguarding the money, performed a task that was essential to the employer's business, and received compensation for transporting the money. See id. In effect, our analysis identified factors relevant to whether a purported business motive is a sufficient concurrent cause to satisfy the dual purpose doctrine. Moreover, we reaffirmed our rejection of the Marks' Dependents rule, stating, "We find that under the instant facts the inference would be permissible that the trip would have been made even if Gulliford had not intended to go to work that day. Therefore, even under the more strict rule of Marks', which we rejected in Cook, liability has been established." Nikko, 448 So.2d at 1005.
In determining the applicability of the "going and coming" rule, several courts have also relied on Larson's treatise on workers' compensation, which elucidates the dual purpose doctrine. Larson explains that the Marks' Dependents court defined "concurrent cause" as "a cause which would have occasioned the making of the trip even if the private mission had been cancelled." 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 18.13, at 4-81 (1997). Larson further explains:
[I]t is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken by this particular employee at this particular time. It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have been chosen; but if a special trip would have had to be made for this purpose, and if the employer got this necessary item of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip, rather than an incidental appendage or afterthought.
Once this test is satisfied, there is no occasion to weigh the business and personal motives to determine which is dominant.
Id. (footnotes omitted). Larson further indicates that the question becomes: "Was the business mission of such character or importance that it would have necessitated a trip by someone if this employee had not been able to handle it in combination with the homeward journey?" Id. § 18.21, at 4-83.
According to McDonald's, the concurrent cause test inquires whether someone, at some time, would have had to make the trip in order to accomplish the business mission if this particular claimant failed to do so. To this end, McDonald's asserts that courts must assess the necessity and essentiality of the task to determine whether the concurrent cause test is satisfied, as evidenced by Nikko and cases from other jurisdictions. Interestingly, Swartz does not contest McDonald's formulation of the concurrent cause standard. Rather, Swartz contends that the transport of the booth satisfies this test. However, Swartz *947 asserts the JCC's finding that transport of the booth imposed a minor burden in light of Swartz's route home was erroneous as a matter of law because courts cannot weigh the employee's business and personal motives.
As a threshold matter, we must resolve the ambiguity concerning the proper test to apply. In Cook, we expressly rejected the Marks' Dependents rule, which required that the trip would have been made even though the private errand had been canceled. See Cook, 82 So.2d at 680, 682. Larson explains that this rule means that some employee, at some time, would have had to make the journey to accomplish the business mission. Both McDonald's and Swartz cite Larson's definition of the concurrent cause test. However, we have previously rejected the Marks' Dependents rule in Cook.
In Cook, we held that only concurrent purposes were necessary to satisfy the dual purpose doctrine. See id. at 682. In so doing, we interpreted the Marks' Dependents rule as inquiring into the dominant purpose of the trip, although Larson asserts that this is an erroneous construction. Larson maintains that a sufficient business motive exists when the trip would have been made by someone at some time and, once this test is satisfied, courts should not weigh the relative importance of the personal and business motives. In effect, we concluded in Cook that the Marks' Dependents inquiry necessarily requires courts to weigh the business and personal purposes. Moreover, in Nikko we articulated factors constituting a sufficient business purpose while simultaneously reaffirming our rejection of the Marks' Dependents rule. We accepted jurisdiction because the First District's application of the Marks' Dependents rule conflicted with our previous decisions expressly rejecting this rule.
In revisiting this issue, we recognize that we could adopt the standard urged by Larson, who indicates that it is the proper construction of the Marks' Dependents rule.[4] This option, although appealing, is not necessarily more favorable because we previously canvassed the competing interpretations and deliberately adopted the more liberal rule. Therefore, we reaffirm both Nikko and Cook. Nevertheless, the parties continue to dispute whether another trip would have been required if Swartz had failed to transport the booth and whether the transport of the booth was a necessary or essential task, both of which are factors relevant to Larson's interpretation of the Marks' Dependents rule.
Swartz contends that the JCC's finding that she was not engaged in an employment-related duty was clearly erroneous and unsupported by the record. McDonald's, however, concedes that the booth was helpful and beneficial, but contends that McDonald's could have participated in the job fair if Swartz failed to bring the booth. In short, McDonald's argues that the purpose of the journey was not to deliver the equipment, but to participate in the job fair, which could be accomplished without the display booth. Consequently, Swartz was merely carrying employment-related paraphernalia which created an incidental benefit but was not an essential task.
The record in the instant case demonstrated that Swartz was responsible for several recruitment responsibilities. Several employees testified concerning *948 Swartz's responsibility of attending and bringing materials to job fairs. McDonald's job fair booths are integral parts of these fairs because they easily distinguish the company from other smaller employers. Indeed, Swartz testified, "Our name sells us at a job fair." The job fair booth was stored in the Tampa office, and Swartz indicated that she would have to travel to Tampa to retrieve the booth unless she made other arrangements to pick it up from another consultant. No other arrangements had been made for the Orlando job fair. On the contrary, counsel for McDonald's stipulated that "[McDonald's] told her to bring the booth and there were no other arrangements. I mean, that was the arrangement." Lenco also testified that the entire booth would not fit in her car, and she needed Swartz's assistance to take the booth to the job fair. It is undisputed that Swartz was transporting the booth at the time of the accident. Although McDonald's was not always granted space to display its recruitment booth at job fairs, it was allowed to showcase its display booth at the Orlando fair. Despite the emphasis on bringing the booth, Lenco testified that McDonald's occasionally participated in job fairs without applicants' resumes and completed applications.
Testimony at the JCC hearing also concerned the necessary or essential nature of Swartz's task. In response to a question concerning whether it was necessary to have the booth ready for the job fair, Lenco replied, "Yes, that started on Monday." Moreover, Lenco stated, "We are required to bring materials to the job fair...." Jones testified that the job fairs typically require set-up of the booth, and Lenco confirmed that consultants were responsible for carrying all of the necessary materials to the job fair. Indeed, Jones testified that she expected the employees to carry the booth to the Orlando job fair.
In light of the foregoing testimony, we conclude that the JCC's findings are not supported by competent, substantial evidence. See Forming Contractors v. Castro, 743 So.2d 641, 641 (Fla. 1st DCA 1999) (JCC's order on a worker's compensation claim will be affirmed on appeal if supported by competent, substantial evidence). First, Swartz, like the employee in Nikko, had a clear understanding with McDonald's regarding her responsibility for transporting the booth. Indeed, McDonald's counsel stipulated that McDonald's instructed Swartz to bring the booth to the Orlando job fair. Thus, Swartz was unlike the employee in Rowe, who never reached an explicit agreement with her employer regarding a storage place for the fees she was transporting.
Second, Swartz was performing a task that was integral to McDonald's successful participation in the job fair. Although McDonald's minimizes the importance of transporting the booth, the record does not support this conclusion. The testimony indicated that consultants were responsible for recruiting, Swartz was responsible for transporting the booth, McDonald's displayed booths whenever the job fairs permitted, no other preparation for the job fairs was required except bringing the booths and written materials, and the booths displayed brand identity, which undoubtedly distinguished McDonald's from less notable employers. The instant case is unlike Rowe, where the employee's transport of the nursery fees was not "necessary, or even helpful, to the functioning of the nursery school." Nikko, 448 So.2d at 1004. On the contrary, the booth directly affected McDonald's participation in the job fair. That consultants occasionally attended job fairs without resumes and completed applications does not negate Swartz's contention that recruitment booths were routinely used to sell McDonald's *949 name at job fairs. Although the employment duty in Nikko was absolutely necessary to the functioning of the employer's business, we did not suggest that every business motive must be absolutely essential to constitute a sufficient business purpose. Rather, in distinguishing Rowe, we noted that Rowe's employment responsibility was not "necessary, or even helpful." Id. Although McDonald's contends that the job fair would have continued if Swartz had failed to bring the booth, the presence of the recruitment booth at a job fair was sufficiently important that it had more than an incidental effect on the operation of the job fair. Perhaps Swartz's transport of the booth was not as essential as the employment duty in Nikko. Nevertheless, it impacted McDonald's business significantly more than Rowe's transport of nursery fees affected the nursery school's operation.
Third, Swartz, unlike the Nikko employee, did not receive additional compensation for transporting the booth. This distinction, however, is not dispositive because consultants were allowed to use company cars when traveling, and McDonald's subsidized the gas payments. Thus, McDonald's recognized the additional burden of traveling to various job fairs by providing some form of transportation reimbursement. This arrangement is unlike Rowe, where the employee was not compensated in any additional manner for her transport of nursery school fees.
In short, the instant case is more analogous to Nikko than to Rowe. To be sure, the employee in Nikko performed a more critical function for his employer. Nevertheless, Swartz's transport of the booth was sufficiently important to the operation of the job fair that it cannot be deemed a mere incidental benefit, especially in light of the repeated testimony regarding the mandatory nature of this employment responsibility.
As previously mentioned, the parties contest whether someone would have had to make a special trip to deliver the booth if Swartz had failed to perform this duty. Swartz insists that she would have had to travel to Tampa to retrieve the booth if she had not brought it home with her; however, McDonald's emphasizes that the job fair would have occurred even if Swartz had neglected to perform this duty. Contrary to the First District's decision, the record supports the conclusion that Swartz, as the employee required to bring the booth, would have had to travel to Tampa to secure the booth if she had not transported it home at the time of the accident. If Swartz had not been assigned that responsibility, another employee would undoubtedly have transported the booth. Indeed, several employees consistently testified concerning the requirements and procedures for bringing display booths to job fairs. Although McDonald's emphasizes that the consultants still could have participated in the job fair if Swartz had failed to deliver the booth, in light of its representation at other fairs where booths were not permitted, this fact does not resolve the issue conclusively. It is true that, had Swartz failed to bring the booth, the consultants would have still participated in light of the inconvenience of attempting to secure the booth the morning of the job fair. However, under any other circumstances, the record clearly indicates that McDonald's would have required either Swartz or another employee to retrieve the booth from the Tampa office and take it to the job fair. Thus, even if we were to adopt Larson's construction of the Marks' Dependents rule, which inquires whether the trip would have been made if the private errand had been canceled, it appears that Swartz's accident is compensable.
*950 Lastly, McDonald's cautions the Court that extending the dual purpose doctrine to Swartz's accident would allow almost anyone to recover merely because they were carrying employment-related paraphernalia at the time of their accident. This prediction, however, is not necessarily true. On the contrary, Rowe expressly held that compensability would not be allowed under these circumstances. Neither Nikko nor such a decision here renders this holding a nullity. These decisions merely recognize a sufficient business purpose, which must be analyzed on a case-by-case basis. If no such purpose is found, Rowe continues to preclude recovery for employees who were merely carrying tools of employment when injured and, therefore, not performing a legitimate business purpose.
For the foregoing reasons, we hold that Swartz's accident is compensable under the dual purpose doctrine, as defined in Nikko and Cook. Accordingly, we quash the First District's decision and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, HARDING, and PARIENTE, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which PARIENTE, J., concurs.
WELLS, C.J., dissents with an opinion, in which LEWIS, J., concurs.
ANSTEAD, J., specially concurring.
In the usual case an employee who is injured in an accident while going to her daily work or returning home from work is not entitled to workers' compensation benefits. However, we have consistently recognized an exception to the "going and coming" rule of non-liability for instances in which an employee's going or coming trip to or from work serves an additional or concurrent purpose benefitting the employer. Hence, in Nikko Gold Coast Cruises v. Gulliford, 448 So.2d 1002 (Fla. 1984), we held that an employee was entitled to compensation even though he was going to work at the time of his accident. We reasoned that, at the time, the employee was also acting at the employer's request to transport the cash of the business back to the employer's premises as part of his job responsibilities. See id. at 1004. We explained:
Since our decision in Cook [v. Highway Casualty Co., 82 So.2d 679 (Fla. 1955)], we have continued to hold that it is not necessary that the dominant purpose of a trip be business. All that need be determined is that an injury occurred as the result of a trip, a concurrent cause of which was a business purpose. See, e.g., Krause v. West Lumber Co., 227 So.2d 486 (Fla.1969); Levine v. Builders Aluminum Stone Co., 186 So.2d 26 (Fla.1966). We hold that in the instant case Gulliford's task of bringing the cash to work for the ticket sellers' use was a sufficient concurring cause of his trip to invoke liability as a work related injury.
Id. at 1005. The majority has applied Nikko here in holding that, as in Nikko, the employee was transporting a display booth from Tampa to Orlando as part of her job responsibilities to transport and use the booth at a job fair in Orlando. I agree that the majority has properly applied our holding in Nikko.
PARIENTE, J., concurs.
WELLS, C.J., dissenting.
I dissent because I agree with the wellreasoned opinion of the majority on the First District and the application of section 440.092(2), Florida Statutes, by the Judge of Compensation Claims (JCC). I further conclude that this case should be controlled *951 by the plain language of the statute, which requires approval of the district court's affirmance of the JCC's order.
LEWIS, J., concurs.
NOTES
[1] The employer-provided transportation exception, which is specifically referenced in the statute, permits recovery where the employer provides the employee's transportation to and from work incident to an express or implied agreement. See Huddock v. Grant Motor Co., 228 So.2d 898, 899-900 (Fla. 1969); Povia Bros. Farms v. Velez, 74 So.2d 103, 104-05 (Fla.1954). Section 440.092(2) eliminates this exception when the means of transportation is available for the employee's exclusive personal use. See § 440.092(2), Fla. Stat. (1995). Section 440.092(4) addresses the exception for traveling employees, which allows compensation for traveling employees injured during their travel status. See Grillo v. Gorney Beauty Shops Co., 249 So.2d 13, 15 (Fla.1971). Section 440.092(4) limits the traveling employee exception when an employee is merely traveling to or from work. See § 440.092(4), Fla. Stat. (1995).
[2] Swartz contends that Advanced Diagnostics v. Walsh, 437 So.2d 778 (Fla. 1st DCA 1983), Standard Distribution Co. v. Johnson, 445 So.2d 663 (Fla. 1st DCA 1984), and Poinciana Village Construction Corp. v. Gallarano, 424 So.2d 822 (Fla. 1st DCA 1982), all permit exceptions to the "going and coming" rule for missions completed on behalf of the employer without requiring suddenness and irregularity. As such, a mission should be distinguished from a special errand. Although Swartz correctly notes that some cases have permitted exceptions to the "going and coming" rule without requiring suddenness and irregularity, the cited cases do not fully support Swartz's argument because they do not apply the dual purpose doctrine. For example, the court in Advanced Diagnostics expressly noted that the "going and coming" rule was inapplicable and, therefore, no exception to the rule was needed. See 437 So.2d at 779. In Standard Distribution, the court applied the traveling employee exception, not the dual purpose doctrine. See 445 So.2d at 664. In Poinciana Village, the court's decision was based primarily on an agreement between the employee and employer that extended the scope of employment and, therefore, rendered the accident compensable. See 424 So.2d at 824. Although other exceptions operate without requiring suddenness and irregularity, they are not at issue in this case. Nevertheless, Swartz correctly recognizes other dual purpose cases which require neither suddenness nor irregularity.
[3] The court in Brookhaven Steam Laundry v. Watts, said that when applying the dual purpose doctrine courts will not determine the relative importance of the business purpose vis-a-vis the personal motive.
[4] Since our decision in Nikko, other jurisdictions have adopted Larson's interpretation of the Marks' Dependents rule. See Campbell v. Industrial Comm'n, 165 Ariz. 583, 799 P.2d 1357 (Ct.App.1990); Jane Traylor, Inc. v. Cooksey, 31 Ark.App. 245, 792 S.W.2d 351 (1990); Jacobs v. Consolidated Tel. Co., 237 Neb. 772, 467 N.W.2d 864 (1991).