790 So.2d 1057 (2001)
Caroline GILBERT, Petitioner,
v.
PUBLIX SUPERMARKETS, INC., et. al., Respondents.
No. SC94998.
Supreme Court of Florida.
July 12, 2001.
Thomas A. Vaughan of Vaughan, Donohoe & Williams, Orlando, FL, and Bill McCabe, Longwood, FL, for Petitioner.
Arthur J. England, Jr. and Brenda K. Supple of Greenberg Traurig, P.A., Miami, FL, for Respondents.
QUINCE, J.
We have for review Gilbert v. Publix Supermarkets, Inc., 724 So.2d 1222 (Fla. 1st DCA 1998), which is alleged to expressly and directly conflict with our opinions in Nikko Gold Coast Cruises v. Gulliford, 448 So.2d 1002 (Fla.1984), and Cook v. Highway Casualty Co., 82 So.2d 679 (Fla.1955), and which cited to the First District's decision in Swartz v. McDonald's Corporation, 726 So.2d 783 (Fla. 1st DCA 1998), quashed, 788 So.2d 937 (Fla.2001), a decision which was granted review in this Court. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.; Jollie v. State, 405 So.2d 418 (Fla.1981). For the reasons expressed *1058 below, we hold that under the facts of this case workers' compensation benefits are not payable under the dual purpose exception to the "going and coming" rule and approve the decision below.

BACKGROUND
Caroline Gilbert (Gilbert) seeks review of the denial of a workers' compensation claim. Gilbert, a second assistant manager for Publix Supermarkets, Inc. (Publix), was injured in an automobile accident which occurred at approximately 3:45 a.m. on January 26, 1995, en route from her home to her place of employment at Publix. Although Gilbert's obligations for this position varied, she was responsible for both opening the store at 4:00 a.m. and preparing the weekly store newsletter. At the compensation hearing, Nathan Hicks, a second assistant store manager, Michael Seithel, the assistant store manager, and David Curry, the store manager, all testified that the newsletter was distributed with the paychecks on Thursday mornings at 8:00 a.m. Both Curry and Hicks testified that Gilbert was held accountable for preparing the newsletter. Indeed, Gilbert began preparing the newsletter at the request of Curry.
Typically, Gilbert prepared the newsletter at home on Wednesday evenings and delivered it to the store by 7:00 a.m. on Thursday mornings. The record is unclear as to why Gilbert prepared the newsletter at home. Although Gilbert suggests that she worked on the newsletter at home because there was no typewriter in the store, the record also reflects that there was a computer at the store which she could have used to prepare the newsletter. Although Seithel and Curry testified that they encouraged Gilbert to prepare the newsletter at work, they both admitted that they never prohibited her from preparing it at home. Indeed, Publix paid Gilbert for the time she spent working on the newsletter at home if she kept a record of her time. Publix, however, did not pay Gilbert for her travel time when transporting the newsletter to work. Interestingly, Kelly Wagoner, another Publix employee, temporarily assumed the responsibility of preparing the newsletter after Gilbert's accident. Like Gilbert, Wagoner prepared the newsletter at home, delivered it on days she was not scheduled to work, and was never advised against working on the newsletter at home.
According to the unrefuted testimony, Gilbert's usual practice was to deliver the newsletter on Thursday mornings, even on days when she was not scheduled to work. Publix, however, alleges that Gilbert was not required to deliver the newsletter on days she was not working. Curry testified that he merely expected the newsletter to be completed on Wednesday if Gilbert were not reporting to work the next day. Moreover, on the day of the accident, the newsletter was not delivered, but paychecks were still distributed. Curry's testimony nevertheless indicates that there were no restrictions as to when Gilbert could deliver the newsletter, so long as it was delivered before paycheck distribution.
Although Gilbert was scheduled to open the store on the morning of the accident, the record indicates that Gilbert was also transporting the newsletter. Indeed, the store newsletter was among the belongings retrieved from Gilbert's car after the accident. In addition, Gilbert's son testified that he heard his mother working on the newsletter on both the evening before and the morning of the accident. The record further indicated that the site of the accident was four to five miles from Publix and was located on the most direct route from Gilbert's home to Publix.
*1059 After the accident, Gilbert filed a petition for workers' compensation benefits. Publix, however, filed a notice of denial, claiming Gilbert's injuries were not compensable because her injuries did not arise out of or in the course of her employment. The Judge of Compensation Claims (JCC) held evidentiary hearings and entered an order denying compensability. The JCC, however, vacated this order in response to Gilbert's motion for rehearing. After several more hearings, the JCC entered a final order denying compensability. The JCC made the following findings: Gilbert drove her normal route to work; she was scheduled to open Publix at 4:00 a.m. as part of her customary work schedule; the stretch of the road driven posed no special hazard; the managers did not prohibit her from working on the newsletter at home; the newsletter was completed before she left her house for work; the newsletter was in the car at the time of the accident; she was not paid for her travel time; she was not transporting the newsletter purposely for delivery at 4:00 a.m.; her sole purpose for traveling to work was to open the store; and the trip did not constitute a special errand. Accordingly, the JCC denied compensation and the attendant claims for indemnity, medical expenses, costs, and attorney's fees. The JCC also denied Gilbert's subsequent motion for rehearing.
Thereafter, Gilbert appealed to the First District Court of Appeal. The First District affirmed on all issues, but specifically addressed exceptions to the "going and coming" rule. The court concluded that because Gilbert prepared the newsletter at home for her convenience, her home did not constitute a second job site. See Gilbert, 724 So.2d at 1222. Therefore, she did not fall under the exception to the "going and coming" rule for traveling between two employment premises. See id. The court further held that it was not necessary for Gilbert to deliver the newsletter to the store on the morning of the accident. See id. Instead, delivering the newsletter was an incidental part of her trip and "she would not have made the drive if the personal motive (going to work) was removed." Id. Gilbert sought review of the First District's decision, and this Court accepted jurisdiction and dispensed with oral argument.

ANALYSIS
At issue in the present case is whether Gilbert's accident is compensable under our Workers' Compensation Law. To be compensable, the accident must arise out of or in the course and scope of employment. See § 440.09(1), Fla.Stat. (Supp. 1994). The "going and coming" rule, as codified in section 440.092(2), Florida Statutes (Supp.1994), provides that injuries sustained while going to or coming from work do not arise out of or in the course and scope of employment.[1]See Bechtel Constr. Co. v. Lehning, 684 So.2d 334 (Fla. 4th DCA 1996). There are several exceptions to the "going and coming" rule. In the present case, the parties dispute the applicability of the dual purpose exception.
This Court first adopted the dual purpose exception to the "going and coming" rule in Cook. In determining whether the employees' workers' compensation claims were compensable, we opined that the inquiry should not assess whether the business *1060 purpose is the dominant or more compelling purpose. Rather, compensation should depend upon whether the business and personal purposes are concurrent. In so doing, we rejected the stringent test formulated in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (1929), which inquired whether the employee would have still made the trip if the private errand had been canceled.
We reaffirmed and elucidated Cook in Nikko. In that case, the injured employee's job duties included taking money home from the cash drawers and returning it early the next morning so that the employer would have a ready supply of cash to begin the next business day. See Nikko, 448 So.2d at 1003. The former owner of the company admitted that he initiated this practice and compensated the employee for the cost of taking the cash home at night and bringing it back in the morning. See id. After the employee was involved in an accident en route to work one morning, the new employer contested his workers' compensation claim on the basis that the accident did not arise out of and in the course of his employment. See id. at 1003-04.
In determining whether the employee's claim was compensable, we concluded that Cook was controlling. In so doing, we distinguished Nikko from United States Fidelity and Guaranty Co. v. Rowe, 126 So.2d 737 (Fla.1961), which involved an employee who was injured in an accident while transporting nursery school fees. We noted that contrary to Rowe, the employee in Nikko had a clear understanding with his employer regarding the arrangements for safeguarding the money, performed a task that was essential to the employer's business, and received compensation for transporting the money. Consequently, Cook, not Rowe, was controlling. Although we noted that the circumstances in Nikko would have satisfied the more stringent Marks' Dependents rule, which requires an inference that the trip would have been made if the private errand had been canceled, we expressly stated that we had previously rejected this rule in Cook.
In our recent decision in Swartz v. McDonald's Corp., 26 Fla. L. Weekly S350 (Fla. May 24, 2001), we held that injuries sustained by an employee who was both traveling home and transporting materials necessary for her attendance at a function for her employer were compensable under the dual purpose doctrine. In so doing, we reaffirmed our previous decisions by holding that so long as both a business and personal purpose exist, the dual purpose doctrine is applicable, and the accident is compensable.
In applying this standard, we conclude that the present case falls outside of the dual purpose exception because the JCC and the district court found there was no dual purpose for the trip, only a personal one, traveling to work, and this finding is supported by substantial competent evidence. Gilbert was driving her normal route to work to open the store at 4:00 a.m. She had placed the newsletter in the car for delivery at work. She had completed the newsletter at home, a practice that was done for her own convenience. In order to be compensable, the accident must have occurred while the claimant was pursuing both work-related and personal travel. Gilbert does not fall into that category.
Accordingly, we find that Gilbert's accident is not compensable under the dual purpose doctrine and approve the decision below.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, and LEWIS, JJ., concur. WELLS, C.J., concurs with an opinion.
*1061 WELLS, C.J., concurring.
I concur in the result in this case. I dissented in Swartz v. McDonald's Corp., 788 So.2d 937 (Fla.2001), which should have had the same result as this case.
NOTES
[1] Section 440.092(2) provides:

An injury suffered while going to or coming from work is not an injury arising out of and in the course of employment whether or not the employer provided transportation if such means of transportation was available for the exclusive personal use by the employee, unless the employee was engaged in a special errand or mission for the employer. § 440.092(2), Fla. Stat. (Supp.1994).